**FELDMAN et al. v. BEVIL, County Judge, et al.**

No. 4294.

Court of Civil Appeals of Texas. Beaumont.

Oct. 11, 1945.

Rehearing Denied Oct. 31, 1945.

Shirley W. Peters, of Dallas, for appellants.

Orgain, Bell & Tucker, of Beaumont, for appellees.

MURRAY, Justice.

This is an appeal from a judgment of the District Court of Hardin County, Texas, in a suit brought by appellants, Feldman and Pardo, against the tax assessor-collector of Hardin County, to enjoin the assessing and collecting by them of taxes for the year 1944 on the appellants' property in Hardin County upon values set thereon by the Commissioners' Court acting as a Board of Equalization. The court sitting without a jury rendered judgment for defendants, appellees here, denying the relief sought and in effect upheld the action of the Board of Equalization, and the matter is now properly before us for review.

The property owned by appellants was formerly owned by the Rio Bravo Oil Company and consisted of many tracts of land, together with a number of producing oil wells, pipe lines, pump houses, storage tanks and oil in storage, and other property. Negotiations for the purchase and sale were begun in June, 1943. The agreement for purchase and sale was concluded in October, 1943, and the actual deed of transfer was executed in February, 1944. The appellants bought the property of the Rio Bravo Oil Company situated in 42 Texas counties and two Louisiana parishes. The consideration was $175,000 cash and an oil payment of one million dollars in oil out of 1/6th of the oil to be produced after the purchasers had produced 1,300,000 barrels of oil from the wells then producing, and royalties of 1/8th of any oil obtained from deeper production of the present producing areas, and 1/8th royalty of any oil produced from wildcat operation. The testimony was that the property in Hardin County was estimated to be valued at 3/7ths of the total value of the properties purchased.

Rendition of the Hardin County property for taxes was made in the name of the Rio Bravo Oil Company as of January 1, 1944, at a valuation of $72,890. The Board of Equalization gave notice by mail addressed to Rio Bravo Oil Company (which notice was apparently accepted by the appellants)

that the assessment had been increased to $201,940, and such notice set a date on which a hearing would be had before the Board of Equalization for any protests to be made upon such increase. The appellants appeared for such hearing and testimony was taken regarding values of the property previously owned by Rio Bravo Oil Company and of values and renditions of property owned by other oil companies and individuals situated in the same oil field with those properties.

For the years immediately preceding 1944 the Rio Bravo Oil Company had paid taxes on the property here involved, set by the Hardin County Board of Equalization at $229,110 for 1939, $219,700 for 1940, $216,550 for 1941, $210,000 for 1942 and $207,610 for 1943.

■ The appellants by their first point say that the action of the Board of Equalization was void and should be set aside because any increase made over the rendition values of the property of $72,890 was made by the Board of Equalization itself and was not made by the Tax Assessor, and therefore their original rendition so made was prima facie a correct rendition. When the 1944 rendition was received by the tax assessor-collector, he placed as notations upon said rendition the 1943 values of each item of property which had been reduced in value in the 1944 rendition. The tax assessor-collector made such notations for the benefit of the Commissioners' Court when it should act upon the renditions, sitting as a Board of Equalization. On the authority of the case of Brundrett v. Lucas, Tex.Civ. App., 194 S.W. 613, we do not believe that such an action by the assessor-collector was an acceptance by him of the values placed on their property by the appellants in the rendition. Although the testimony shows that the Board of Equalization had requested the tax assessor-collector to give it the benefit of listing on all renditions final tax values of the preceding year, we do not believe this to be an instance in which the Tax Assessor acted entirely upon the instructions of some one else. The record here shows that the tax assessor was also acting upon his own judgment in making such notations on the renditions and calling them to the attention of the Board of Equalization. Such action has been approved by the courts in Brundrett v. Lucas, supra; Crocker v. Santo Consol.-Independent School Dist., Tex.Civ.App., 116 S.W.2d 750; Ferris v. Kemble, 75 Tex. 476, 12

S.W. 689. Appellants' contention in this regard is overruled.

■ By their second point, the appellants attack the action of the Board of Equalization in raising the value of their properties to $201,940 on the ground that all the evidence introduced in the hearing before the Board of Equalization was that the reasonable cash market value of the properties they acquired in Hardin County, Texas, on January 1, 1944, was $75,000. They say that the action of the Board disregarded the testimony actually introduced and arbitrarily fixed the higher value on their properties and hence was void.

It must be kept in mind in considering this point that the Board of Equalization was authorized to and did consider other relevant facts within their knowledge pertaining to the value of appellants' property. The Rio Bravo Oil Company had rendered for taxation the preceding year one portion of their property, the Cotton Survey, at $65,000. The values that company had paid taxes upon in previous years, running well over $200,000 for each of the five preceding years, was known to the members of the Board of Equalization. The record discloses testimony before the Board that there was no material change in values between January 1, 1943, and January 1, 1944, except by reason of the quantities of oil taken from the field in that time. There were other items of information about the physical properties in the possession of members of the Board, such as the size and condition of the pipe lines, the pump houses, and other property incidental to the operation of the oil field. The terms of the sale to the appellants were known to the Board and there was testimony before it on the hearing. These matters all were properly considered by the members of the Board in fixing the values for taxation on appellants' property. See Exporters & Traders Compress & Warehouse Co. v. City of Marlin, Tex.Civ.App., 130 S.W.2d 860, and cases therein cited. City of Tyler v. Rowland, Tex.Civ.App., 297 S.W. 923. We cannot agree with the contention of appellants that the Board of Equalization was guilty in this instance of fixing arbitrarily values on their property not in accord with the evidence before it, and their second point is overruled.

■ Appellants' third point is stated in their brief as follows: "Grossly excessive assessments are fraudulent as a matter of law, and void." As an abstract proposition

of law this statement is correct and is amply supported by the authorities cited. Appellants rely for reversal on this point, however, upon the belief that the only matters as to values before the Board of Equalization was their own testimony that the property was worth only $75,000 as is outlined above in the discussion of their second point. As indicated there, we believe the other matters relating to values which were known to members of the Board afforded sufficient basis for the Board's finding that the property had a greater valuation than was testified to by witnesses for appellants.

While this statement of appellants' third point may not comply with the requirements of Rule 418 of the Texas Rules of Civil Procedure, nevertheless under the holding in Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 and Wagley v. Fambrough, Tex.Civ.App., 163 S.W.2d 1072, we have fully considered it. By their statement and argument under the point we are able to search the record for errors to which we are directed by such statement and argument.

Believing that no support is found in the record for the statement made under the point, we find no proof of a grossly excessive assessment upon appellants' property, and their third point is overruled.

Appellants' fourth point is stated in their brief as follows: "An assessment which is arbitrary or made in pursuance to a rule, plan or scheme which results in discrimination is void." From appellants' statement and argument under this point we learn that the basis of their complaint thereunder was the fact that the Board of Equalization assessed a valuation upon oil in storage in Hardin County at 35 cents per barrel when its market price on January 1, 1944, was $1.06 per barrel; and that the Board of Equalization used 60 per cent of the value of the property, other than oil in storage, of the appellants and other taxpayers as the basis for their assessment thereon. The record reflects that as to the oil in storage assessed against appellants in Hardin County, the same basis of about 1/3 of its market value was used by the Board of Equalization. The appellants complain however that the Board of Equalization professed to assess all other property in the county on a basis of 60 per cent of its market value, and therefore this 1/3 basis as to oil in storage was discriminatory and void. We are unable to see any discrimination against the appellants in this procedure. The oil in storage owned by Rio Bravo Oil Company was assessed on the same basis as the oil in storage owned by other companies and individuals. The common practice of various tax assessing bodies in assessing oil in storage according to local conditions is well recognized. So long as the appellants' oil in storage was not assessed on a higher value per barrel than that of other property owners holding oil in storage under similar conditions and of the same market value, there was no discrimination against the appellants or Rio Bravo Oil Company.

In a supplemental brief filed by appellants, the proposition is advanced for the first time that because the terms of the purchase price by them of the Hardin County property from the Rio Bravo Oil Company included a deferred oil payment and royalty payments, a distinct and separate ownership of part of the property was still vested in the Rio Bravo Oil Company. They maintain that under the holding in Bashara v. Saratoga Independent School Dist., 139 Tex. 532, 163 S.W.2d 631, the interest which was not purchased by them from Rio Bravo Oil Company could not be taxed against them. We do not so apply the holding in the Bashara v. Independent School. Dist. case to the facts here presented. All of the testimony before the Board and before the district court was based upon the values of Hardin County properties of Rio Bravo Oil Company as of January 1, 1944. The discussion in the briefs of both appellants and appellees treated the question of values of all the property owned by Rio Bravo Oil Company in Hardin County as of January 1, 1944 rather than a question of appellants' owning only a portion of such property. If there had been any division of ownership by the reservation of an oil payment and royalty interest by the Rio Bravo Oil Company, that fact does not enter into the validity of assessments made against the whole property as of January 1, 1944, by the Board of Equalization. This contention of appellants is denied.

The property in question was owned by Rio Bravo Oil Company on January 1, 1944, was rendered for taxation by it, and the values thereon were properly set by the Board of Equalization after notice and hearing. Such a Board is not bound by the rules of evidence which obtain in a court and, in the absence of fraud or illegality, the propriety of its actions will be upheld when an honest effort is made to arrive at

fair valuations. State v. Mallet Land & Cattle Co., 126 Tex. 392, 88 S.W.2d 471. There is no evidence of fraud or illegality present in this case, and sufficient evidence of an honest effort to fix fair values is in the record.

The judgment of the district court is affirmed.