**BIRDWELL v. CITY OF BOYD, WISE COUNTY.**

No. 15183.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 13, 1950.

H. G. Woodruff, of Decatur, for appellant.

Jones, Phillips & Watkins, of Dallas, for appellee.

SPEER, Justice.

Appellee City of Boyd, Wise County, Texas, incorporated under the General Laws of Texas, sued and recovered judgment for $42.66 taxes for the year 1948, with interest from the date of judgment, with foreclosure of a tax lien on described real estate against appellant Abe Birdwell, from which he has appealed.

Appellant defended upon sixteen grounds, in which he attacked the validity of appellee's claim for taxes. Among the defenses were included: No rendition of property by him; none lawfully rendered for him; no legal board of equalization; failure of any such board to make a report of its acts; no tax rolls made up and filed; no levy of taxes by ordinance; and arbitrary action of the city to exempt and omit assessing for taxes much personal property, resulting in a failure to make all taxes equal and uniform; and setting up yet other reasons why he should not pay the tax sued for. Appellant also sought certain injunctive relief against clouding his titles with tax liens for 1947, 1948 and 1949.

Trial was to the court without a jury and no finding of facts was filed.

Appellant relies upon seven points of error. Under these points he presents arguments and refers to the record of matters which, he claims, support the defenses plead by him as above pointed out.

Article 977, R.C.S., Vernon's Ann.Civ. St. art. 977, provides, in substance, that the government of cities like appellee shall consist of a city council composed of a mayor and two aldermen from each ward, and among other officers named is an assessor and collector of taxes. The office of assessor and collector may be dispensed with by ordinance to that effect and those duties may be conferred by the council upon other officers.

By Article 988, R.C.S., it is provided that no member of the city council shall hold any other city office while a member

of the council, unless otherwise provided by the act.

Article 1048 provides that the city council of cities like appellee may act as a board of equalization or in its discretion may appoint such board. By Article 1049 the board of equalization meets and "receive[s] all the assessment lists or books of the assessor * * * for examination, correction, equalization, appraisement, and approval." Under Article 1050 the board "shall cause the assessor to bring before them, * * * the assessment lists or books of the assessor * * * for their examination." Under conditions set out in Article 1053, the board shall give notice to owners of property to appear at a stated time to show cause why the value of property should not be raised; and by Article 1054, after such notice, "the action of said board * * * shall be final, and shall not be subject to revision by said board or by any other tribunal." After the board's duties as above pointed out have been performed, Article 1055 provides that the "property on the assessor's lists or books" shall be approved and the lists or books shall be returned to the assessor so that he may make up his "general rolls as required by law."

The foregoing articles apply here and are not dependent upon Title 122, R.C.S., Vernon's Ann.Civ.St. art. 7041 et seq.

Article 1060a provides, substantially, that all the provisions of Title 122 (which embraces eleven chapters and Articles 7041 to 7359, many of which articles are subdivided into numerous sections) are made available in so far as applicable to municipalities like appellee. Articles 7188 and 7189, included in Title 122, supra, provide for the time and manner of making tax assessments, and Article 7190 provides in effect that if the previously mentioned articles be not strictly complied with, yet the assessment as made shall be as binding for all intents and purposes as if made in strict pursuance of the law. Under Article 7193, if the assessor fails to obtain a statement and list of a taxpayer's property "from any cause," the assessor shall ascertain the nature of the property and assess the same as he believes to be the true and full value thereof, and such assessment shall be as valid and binding as if the property had been rendered by the owner. These provisions in law are made available to such municipalities as appellee when other statutes, such as those above enumerated, do not cover a given situation.

The pertinent testimony as revealed by the record is far from what one might hope to find in such cases but such as we have indicates that appellee proceeded in a rather unorthodox manner in the levy and assessment of the taxes involved. The statement of facts indicates that many entries in the minutes of both the council and equalization board, as well also tax assessment sheets or lists, including that of appellant, were introduced in evidence, marked "exhibits" and are not in the record, but the reporter parenthetically said they were "read." We know from this that the trial court heard them and we must presume he construed them in such way as to support the judgment entered.

There is nothing in the record to indicate that the board of equalization acted in bad faith, that it was capricious or pursued any arbitrary method uncommon to all taxpayers in arriving at valuations. But it affirmatively appears that the council knew that a comparatively small amount of revenue would be required to enable the city to function as such; that both the council and board, with this in mind, were endeavoring to keep operating expenses to a minimum figure and thus reduce the amount of taxes required from each taxpayer. Bearing this in mind, the appellee did not have some of the officials provided for by law. This is especially true with reference to a tax assessor, and no doubt to save the expense of routine preparing assessment sheets and a general tax roll for inspection of the board of equalization, the council furnished to the board the assessment sheets or lists made out in part by the council as herein pointed out, in lieu of a "tax roll" as provided by Articles 1049 and 1050, supra.

◼ If the City ever had an official tax assessor, the record is silent as to how and

when his functions were "dispensed with and his duties conferred upon other officers" of the City, as provided in Article 977, supra. However, it is the settled rule of law that in the absence of testimony to the contrary, it will be presumed that public officials have properly performed their duties.

The record shows without dispute that appellee had, by ordinance, levied the tax for 1948; appellant's tax on real estate in the city for 1948 was due and unpaid; appellee had no official tax assessor for that year when the taxes in dispute accrued; the council procured from the county tax rolls a list of the real estate situated inside the corporate limits and the names of owners; from this data the council made up separate rendition or assessment sheets on real estate with its own estimate of values and applied the rate set by the ordinance to approximately one-third of the estimated market value of the property for tax purposes. No personal property of any taxpayer was put on such assessment sheets by the council. The council appointed a board of equalization and set the time for its meetings. The council employed a resident taxpayer to take the respective assessment sheets previously made by it to each taxpayer, including appellant, with instructions to present such list or sheet to each taxpayer and request him to sign and verify it, and to "get his personal property, whatever it was" and to permit any taxpayer to add any personal property to the list that he should desire, but that on all automobiles purchased since 1937 to make the maximum assessed value at $200 and to not list old automobiles purchased prior to 1937. Some taxpayers did list merchandise and other personal property. Many automobiles were added to the assessment sheets at $200 valuations.

Apparently appellant did not sign or verify the assessment sheet made out by the council for his real estate. The man employed by the council to present such assessment sheets to the taxpayers placed his own initials on the assessment sheet made out for appellant immediately above

the printed words, "Deputy tax assessor," and testified that he knew pretty well all of those who had automobiles to be taxed, and if the owner did not render it, he placed it on the sheet; that he might have missed some, yet he did not know of any omissions. The record fails to show any omissions. From this record, it occurs to us that the man so employed in the matter by the council, under the circumstances, was at least a de facto tax assessor, even though the council had previously partially prepared the rendition sheets for presentation by him to the taxpayer for signature, verification and listing of personal property. When all assessment sheets had been thus presented and either signed or refused by the taxpayer, the sheets were returned to the council and it in turn passed them on in that form to the board of equalization for inspection and equalization. The board met, inspected the lists, attempted to equalize them for taxation, raised some and lowered other values, neither of which appears to be that of appellant's. All taxpayers were afforded an opportunity to appear before the board for protests and other purposes; appellant did not appear before the board for any purpose. When the board had finished its labors, it did not make a written report to the council but met with the council in regular session and upon inquiry by the council the board advised it that the revised assessment sheets constituted its report.

A member of the board of equalization testified that they attempted to equalize all taxes on the basis of approximately one-third of the market value of real estate, to accept a rendition of a maximum of $200 on any automobile purchased after about 1937 and to accept for taxation such personal property as the taxpayer voluntarily added to the sheet. It does not appear that either the council or the board knew of any additional personal property, other than some very old automobiles which had some, but small, values, and intentionally omitted them from the assessment sheet. Only one old car is shown by the record to have been omitted from the assessment sheets. No one said that one was all,

there are intimations that there were others.

One of appellant's complaints here is based upon the theory that his tax is not equal and uniform with others because all personal property was not assessed, including old automobiles which had values, and that those assessed at $200 were worth much more than three times that amount, the basis upon which his real estate was assessed.

■ There is an abundance of testimony to support the trial court's implied finding that the board did not act fraudulently or arbitrarily in approving the assessment of appellant's property for tax purposes at approximately one-third of the value the board believed it to be worth.

■ Article 1054, supra, makes the action of the board of equalization final as to all matters of valuation for taxing purposes. If a party is dissatisfied with the board's proposed valuation, after notice, he must, as a prerequisite to resorting to courts or other tribunals, appear before the board and show cause why the proposed act is wrong. It is a procedural matter, of which he must avail himself. When the rule of presumption that public officials have performed their duties is applied, along with the undisputed facts shown, it can be safely said that the council had authority to levy the tax by ordinance and by proper means assess appellee's property for taxation; that the board of equalization passed upon the value, gave appellant an opportunity to enter his protest, and he failed to do so; that the tax is due and unpaid. The appellee thus made out a prima facie case of liability against appellant. Adams v. Royse City, Tex.Civ.App., 61 S. W.2d 853, writ refused; Doherty v. San Augustine Independent School District, Tex.Civ.App., 178 S.W.2d 866, writ refused, w. m. Appellant does not contend that appellee was without authority to levy and collect taxes with which to defray governmental expenses, nor that the rate charged against his property was beyond the amount allowed by law. His whole defense is predicated upon the manner in which the tax was levied and that same was not equal and uniform, as well also the acts of the court in ordering the four pieces of property sold to pay the lump sum tax, penalty and costs. We shall presently notice the last mentioned phase of the case.

■ Viewing this record as a whole, we have concluded that the levy, assessment, equalization of values, and all proceedings shown to have been done and performed, although not strictly following the letter of the law, were not void, as contended by appellant, but were well within the spirit of the law and constitute a substantial compliance with the law.

■ In such cases as this, when the preliminary proceedings are not *void* and the board of equalization has not acted fraudulently and capriciously in fixing values, a taxpayer's remedy to complain because his tax values are not equal and uniform under the Constitution, Article 8, sec. 1, Vernon's Ann.St., is to first appear before the board of equalization sitting for that purpose, and show cause why the valuations so fixed are incorrect. This is a requisite of diligence required of him by the statutes and the many decided cases. Allen v. Emery Independent School District, Tex.Civ.App., 283 S.W. 674; Menardville Independent School District v. Moser, Tex.Civ.App., 90 S.W.2d 578, and cited cases; Republic Ins. Co. v. Highland Park Independent School District, Tex. Civ.App., 123 S.W.2d 784, writ dismissed, c. j.

■■ Appellant cannot successfully complain that he had not rendered his property for taxation as he contends here. When a taxpayer fails or refuses to render his property under the required oath, the assessor shall make a list of his property subject to taxation and the board of equalization passes upon those values just as if the owner had rendered it. Article 1052, R. C.S. Furthermore, under Article 7190, R. C.S., if the taxpayer fails and refuses to sign and swear to the rendition sheet, the assessment made by the assessor and submitted to the board of equalization is a

valid assessment of his taxes. Texas Public Utilities Corporation v. Holland, Tex. Civ.App., 123 S.W.2d 1028, writ dismissed.

■ More specifically, points of assigned error Nos. 3 and 4 assert the invalidity of the tax because the tax assessor did not make up and submit to the board of equalization a "tax roll" and consequently the board did not review and equalize the taxes from and return the "tax roll" to the assessor. It is quite apparent that cities like appellee do not have to make and submit what is commonly known as "tax rolls" to the board. In Articles 1050, 1052, 1053 and 1055, applicable to cities of this character, reference each time is made to "assessment lists or books" and not confined to "tax rolls" as contended by appellant.

We have pointed out that appellant resists payment of all or any part of his taxes upon the grounds that all the enumerated proceedings were void. We cannot assent to this contention. If we are correct in this, then it must follow that appellant does owe some taxes and the contention made that he was subjected to a greater tax than he otherwise would have been if all personal property subject to taxation had been assessed, would apply only to the excess of his present tax over what it would have been had all personal property been assessed. City of Wichita Falls v. J. J. & M. Taxman Refining Co., Tex. Civ.App., 74 S.W.2d 524, writ refused. In such circumstances the burden of proof was with appellant to make proof of that excess. He made no effort to do this, but, as stated, relied upon the invalidity of the whole proceedings.

■ Without determining the question of whether or not the assessing of all automobiles falling within a certain class at a maximum value of $200 for taxation was a deliberate classification to appellant's financial detriment, it must be noted that the classification and valuation of such automobiles applied alike to all cars and persons owning them. In Feldman v. Bevil, County Judge, Tex.Civ.App., 190 S.W.2d 157, writ refused, w. m., where discrimination in tax values was involved, the court held that the constitutional provision for taxes to be equal and uniform was not violated where the oil in storage by all taxpayers was valued and taxed alike, even though the valuation thereof be less than the percentage of values fixed by the board of equalization on other taxable property. We think the cited authority persuasive that the appellant in this case has no ground of complaint on this phase of the case.

We have made no effort in this opinion to set or fix a formula for proceedings in levying, assessing and fixing tax liens by cities such as appellee, but have only expressed our conclusions in this particular case under the record before us. It is well to add that the better practice in such cases is to strictly follow the provisions of the cited applicable statutes.

■ The record shows that appellee assessed appellant's taxes against four separate tracts of land and sued on the combined tax against all. The court rendered judgment for the whole amount, fixed a lien against all for the full amount and ordered all four tracts sold to satisfy the judgment and lien. In some respects such decree is erroneous. The personal judgment against appellant and the injunction relating to 1947 taxes and liens are correct, but under such authorities as are to be found in 40 T. J., p. 256, sec. 186, where property is rendered or assessed without the owner's rendition, on separate tracts, as in this case, each tract is liable only for the taxes against it. We therefore reform the judgment in so far as it foreclosed a tax lien on all four tracts in solido, and ordered them sold to satisfy the whole tax and lien, and here order that the tax lien shall be foreclosed against each tract and such tract ordered sold as under execution to satisfy the tax and lien against that tract. As thus reformed, the judgment will be affirmed. Reformed and as reformed the judgment is affirmed.