TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00316-CV






Fleming Foods of Texas, Inc., Appellant



v.



John Sharp, Comptroller of Public Accounts of the State of Texas; and

Dan Morales, Attorney General of the State of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 96-12390, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 In 1991, Fleming Foods of Texas, Inc. purchased from Furr's, Inc. a fleet of truck-tractors
for use in the interstate transportation of goods. Fleming purchased the fleet to add to vehicles it already
owned and used in interstate transportation of goods. Before the sale, Furr's operated these vehicles on
routes that extended through Texas and New Mexico. After the sale, Fleming used the vehicles along the
same routes, serving the same points of delivery Furr's had.

 The parties executed the sale in Texas, and title to the vehicles passed in Texas. Both
Fleming and Furr's conducted business in Texas and maintained offices in Texas. The only interstate aspect
of the sale was that the vehicles sold were used in transporting goods across state lines.

 Fleming remitted to the State of Texas the amount of the Interstate Motor Carrier Sales
and Use Tax (IMC tax) it calculated was due on the purchase of the vehicles. See Act of June 1, 1981,
67th Leg., R.S., ch. 752, § 1, 1981 Tex. Gen. Laws 2750, 2751-52 (Tex. Tax Code Ann. § 157.102,
since repealed). (1) The Comptroller, after an audit, issued to Fleming a deficiency assessment in the
approximate amount of $204,809.20 for additional IMC tax and interest. Fleming paid the tax under
protest and later filed suit seeking its refund. Following a bench trial, the district court rendered judgment
for the Comptroller, and Fleming filed this appeal. We will affirm the trial court's judgment.


DISCUSSION


Applicable Law

 The applicable law is contained in former sections 157.101 and 157.102 of the Texas Tax
Code. Former section 157.101 imposes a "motor vehicle sales and use tax on interstate motor vehicles,
trailers, and semitrailers operated by motor carriers which are residents of this state or are domiciled or
doing business in this state." Id. The tax is a one-time tax levied at the time of sale.

 Former section 157.102 describes the way in which the tax is calculated. The method
differs depending on whether the motor carrier has operated in Texas during the previous year. Subsection
(a) provides that the taxable value is multiplied by the ratio of the carrier's "total miles operated in Texas
by interstate truck-tractors and interstate commercial motor vehicles during the preceding year . . . divided
by the total miles operated by the same interstate truck-tractors and interstate commercial motor vehicles
operated in Texas during the preceding year." (2) Subsection (b) provides that, if the motor carrier has not
operated in Texas during the preceding year, it must pay taxes based on an estimate of the miles it will drive
during the year. The carrier must then adjust any overpayment or underpayment based on actual mileage
after the first year of operation. (3)

 Fleming had a mileage factor of .8374 for the interstate motor carriers it owned and
operated during the year before its purchase of the vehicles at issue. Furr's had a mileage factor of .5212
for the interstate motor carriers it owned and operated during the year before its sale of the vehicles to
Fleming. Because Fleming planned to use the vehicles on Furr's existing routes, Fleming used Furr's
mileage factor of .5212 when calculating the tax due on the purchased vehicles.

 By point of error one, Fleming argues that the court erred in concluding that former section
157.102 required the use of Fleming's Texas mileage factor instead of Furr's Texas mileage factor
because, according to Fleming, the plain language of the statute requires that the seller's factor be used. 
Fleming focuses on the portion of the statute stating that the ratio is calculated by dividing the carrier's miles
operated in Texas by the total miles "operated by the same interstate [vehicles] during the preceding year." 
Id. (emphasis added.) That language, Fleming claims, requires the Comptroller to use the ratio Furr's
calculated on its use of the vehicles.

 The Comptroller interprets the provision regarding the "same" interstate vehicles as
requiring only that the interstate motor carrier not include in the divisor the mileage operated by different
vehicles, such as vehicles not operated in Texas at all. The inclusion of additional vehicles in the divisor
would lower the ratio and hence would lower the tax due.

 The Comptroller stresses that the statute refers to the carrier's mileage factor, not the
vehicle's mileage factor. The Comptroller points out that former section 157.102(a)(1) provides that the
tax is the carrier's responsibility and is calculated by dividing the carrier's total miles operated in Texas
by the total miles operated.

 We give serious consideration to an agency's construction of a statute that it is charged with
enforcing, so long as the interpretation is reasonable and does not contradict the plain language of the
statute. See Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993); Stanford v. Butler,
181 S.W.2d 269, 273 (Tex. 1944); Borden, Inc. v. Sharp, 888 S.W.2d 614, 620 (Tex. App.--Austin
1994, writ denied); TEXALTEL v. Public Util. Comm'n, 798 S.W.2d 875, 884 (Tex. App.--Austin
1990, writ denied).

 We conclude that the Comptroller's interpretation is reasonable and does not contradict
the language of the statute. Contrary to Fleming's assertion, former section 157.102 does not plainly
require the use of the seller's ratio.

 Fleming's interpretation seems appealing in this case because it uses the acquired vehicles'
same routes. But, generally, it is reasonable to anticipate that the acquiring carrier will conform the usage
of the new vehicles to its existing routes. In fact, that appears to be the statutory presumption. Certainly,
nothing prevented Fleming from changing its routes at any time. We overrule point of error one. (4)

 By point of error two, Fleming argues that the Comptroller's interpretation violates its right
to equal treatment with similarly situated taxpayers. See Tex. Const. art. VIII, § 1. Fleming compares itself
to three hypothetical taxpayers.

 The first hypothetical taxpayer has no established Texas mileage factor and purchases a
fleet of interstate motor vehicles. The tax would apparently be estimated under Tax Code former section
157.102(b) and corrected at year's end to reflect the actual mileage of the purchased vehicles. 
Hypothetical taxpayer one is not similar to Fleming because Fleming indisputably had an established Texas
mileage factor. 

 Former section 157.102 does distinguish between new carriers and established carriers: 
the new carrier pays in proportion to its actual usage in the year of acquisition, and the existing carrier pays
in proportion to its prior year's usage. But the "mere fact that a discrimination is made proves nothing
against a classification which is not, on its face, an arbitrary, unreasonable or unreal one." Hurt v. Cooper,
110 S.W.2d 896, 901 (Tex. 1937). "The difference between the subjects taxed need not be great, and
if any reasonable distinction can be found, the duty of the court is to sustain the classification embodied in
the law." Fairmont Dallas Restaurant, Inc. v. McBeath, 618 S.W.2d 931, 933 (Tex. Civ. App.--Waco
1981, no writ). The legislature's authority to make classifications in levying occupation, use, and sales taxes
is unquestionably broader than its authority to do so with respect to ad valorem taxes. Enron Corp. v.
Spring Indep. Sch. Dist., 922 S.W.2d 931, 936 (Tex. 1996).

 The statute's presumption that vehicles purchased by an existing carrier will be used in and
outside of Texas in the same proportion as its existing fleet is reasonable. See Birdwell v. City of Boyd,
233 S.W.2d 603, 608 (Tex. Civ. App.--Fort Worth 1950, no writ) (assessment of automobile purchased
after specified year at specified maximum value is acceptable where classification and valuation of 
automobiles applied alike to all such automobiles and to persons owning them). We liken the legislature's
assumption to the allocation of market value, which it has broad authority to determine. See Enron, 922
S.W.2d at 936.

 The second hypothetical taxpayer adds new interstate vehicles to its existing fleet of
interstate vehicles. The vehicles have no established factor and the tax would be calculated on the acquiring
carrier's mileage factor for its existing fleet. We see no disparity in treatment since both Fleming and
hypothetical taxpayer two would be taxed on the established mileage factor of the acquiring carrier. 
Fleming's point seems to be that while taxpayer two acquired a vehicle with no established Texas mileage
factor, the vehicles acquired by Fleming did have an established mileage factor. Again, however, Fleming
looks to the vehicle's factor rather than the carrier's factor. We reject this argument; the Comptroller's
interpretation of the statute, requiring the use of the carrier's mileage factor rather than the acquired
vehicle's mileage factor, is the more reasonable one.

 The third hypothetical taxpayer adds an interstate fleet with a Texas mileage factor of .90
to its existing fleet having a mileage factor of .40. The sale would be taxed at the lower rate of the acquiring
company. Fleming correctly states that it has to pay a higher tax than would its hypothetical counterpart. 
But there is no difference in treatment: both acquiring taxpayers would be taxed on the basis of the factor
calculated on their existing fleets. Although unfortunate for Fleming in the current circumstances, it is not
unconstitutional that the tax assessed Fleming is higher than that assessed the taxpayer with a lower ratio:
the whole basis of the tax is the ratio of the carrier's miles operated in Texas to its total miles operated.

 Because we find no unconstitutional disparity in the treatment of similarly situated taxpayers,
we overrule point of error two.

 By point of error three, Fleming argues that the trial court erred in holding that the assessed
tax does not violate the Commerce Clause of the United States Constitution. See U.S. Const. art. I, § 8,
cl. 3; Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977); Diamond Shamrock Ref. &
Mktg. Co. v. Nueces Co. Appraisal Dist., 876 S.W.2d 298, 301-04 (Tex. 1994).

 The Comptroller makes two arguments in rebuttal: first, that the tax is a sales tax and need
not be apportioned at all under Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. ___, 115 S.
Ct. 1331, 131 L. Ed. 2d 261 (1995); second, that to the extent apportionment is required, the
apportionment is fair.



 A. Tax as Sales Tax

 The general rule is that sales taxes may be allocated on the full value of the sales transaction
and need not be apportioned. Jefferson Lines, 131 L. Ed. 2d at 279. "It has long been settled that a sale
of tangible goods has a sufficient nexus to the State in which the sale is consummated to be treated as a
local transaction taxable by that State." Id. at 271. In Jefferson Lines, the Supreme Court held that a bus
company need not apportion the price of a ticket between the states traveled to. Id. at 274-75. Similarly,
in Eastern Air Transport, Inc. v. South Carolina Tax Commission, 285 U.S. 147, 153 (1932), the
Court upheld a sales tax on the full purchase price of fuel sold in the taxing state and used in transporting
passengers and goods in interstate commerce. See also Wardair Canada, Inc. v. Florida Dep't of
Revenue, 477 U.S. 1, 7 (1986) (holding state-imposed sales tax on full sale price of fuel used by planes
operating charter flights to and from United States did not violate dormant commerce clause).

 Fleming argues that the tax is a use tax rather than a sales tax because it applies only to
vehicles used both in and outside the state. However, it is a one-time tax assessed only on the purchase,
or first use under a lease, of interstate vehicles.

 Fleming distinguishes this tax from a sales tax such as that analyzed in Jefferson Lines
because the goods are not "consumed" but are "used." We see no difference in this distinction. Cf.
Jefferson Lines, 131 L. Ed. 2d at 275 (using "consumption" and "use" interchangeably). However, we
need not decide whether the commerce clause requires that the tax be apportioned because, as discussed
below, we hold that the apportionment is fair.



 B. Fair Apportionment


 The Comptroller argues in the alternative that apportionment under former section 157.102
is fair. We agree.

 In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977), the United States
Supreme Court held that a state tax is valid if it (1) is applied to an activity with a substantial nexus with the
state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly
related to the services provided by the state. Complete Auto, 430 U.S. at 279. Fleming complains that
the Comptroller's interpretation violates the second and fourth parts of the test.

 The second prong, that of fair apportionment, requires both internal and external
consistency. The tax is internally consistent if the imposition by another state of a tax identical to the one
in question would add no burden to interstate commerce that intrastate commerce would not also bear. 
In this case, both parties conduct business in Texas and the sale was executed in Texas. The tax is
internally consistent because if each state applied a similar tax, a tax on the sale of vehicles sold in that state,
no sale would be subject to more than one state's tax. Cf. Jefferson Lines, 131 L. Ed. 2d at 271.

 The tax is externally consistent if it does not reach beyond that portion of the value of the
transaction, enterprise, or property that is fairly attributable to economic activity within the taxing state. The
United States Supreme Court has never found an internally consistent tax to be externally inconsistent. 
Jefferson Lines, 131 L. Ed. 2d at 272. Nevertheless, we will consider Fleming's argument. Fleming
claims that the IMC tax, as applied, reaches beyond the property fairly attributable to economic activity
within the taxing state because the use of its ratio rather than Furr's overstates the property's value
attributable to Texas.

 No particular apportionment formula or method need be used, and when a state has chosen
one, an objecting taxpayer has the burden to demonstrate by "clear and cogent evidence" that the income
attributed to the State is in fact out of all appropriate proportions to the business transacted in that State,
or has led to a grossly distorted result. Moorman Mfg. Co. v. Bair, 437 U.S. 267, 274 (1978). Fleming
has not met that burden here. We hold that the second prong of the Complete Auto test is satisfied
because the tax is both internally and externally consistent.

 The fourth prong of Complete Auto requires that the tax be fairly related to the services
provided by the state. Fleming argues that the tax apportioned to it overvalues the services provided by
Texas and undervalues the services provided by other states for the operation of the same property. "The
fair relation prong of Complete Auto requires no detailed accounting of the services provided to the
taxpayer on account of the activity being tax, nor, indeed, is a State limited to offsetting the public costs
created by the taxed activity." Jefferson Lines, 131 L. Ed. 2d at 281. Complete Auto's fourth criterion
asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the
State. Id. A tax based on sales price and reduced to a percentage related to the carrier's prior year's use
of Texas highways is reasonably related to the carrier's activity within the state. The tax at issue here meets
the fourth prong of the Complete Auto test. We conclude that the assessed tax does not violate the
commerce clause. We overrule point of error three.


CONCLUSION


 Finding no error, we affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: February 5, 1998

Do Not Publish
1. Although the parties both refer to section 157.102, that section has been repealed. See Act of
May 24, 1995, 74th Leg., R.S., ch. 705, § 31(b), 1995 Tex. Gen. Laws 3719, 3740. For simplicity, we
will refer to "former section 157.102."
2. Subsection (a) states:


Except as provided in Subsections (c), (d), and (e) of this section, the payment of the tax
is the responsibility of the motor carrier operating the motor vehicle and the tax rate on an
interstate motor vehicle shall be calculated as follows:


(1) The carrier's total miles operated in Texas by interstate truck-tractors and
interstate commercial motor vehicles during the preceding year is divided by the
total miles operated by the same interstate truck-tractors and interstate commercial
motor vehicles operated in Texas during the preceding year;


 (2) The percentage calculated in Subdivision (1) of this subsection is multiplied by 6-1/4 percent of the purchase price of each interstate motor vehicle purchased in
Texas or first brought into the State of Texas during the reporting. If a lease price
is used in this formula, charges for gasoline, maintenance, insurance, and pass-through charges, such as federal highway use tax and fees for licensing and
registration, may be excluded from the lease price;


 (3) (A) From the amount computed in Subdivision (2) of this subsection may be
deducted the amount of the sales and use tax paid on the interstate motor vehicle
multiplied by the formula in Subdivision (1) of this subsection;

 (B) If an operator is paying sales or use tax on lease payments, he may take the
credit allowed by Paragraph (A) of this subdivision on a quarterly basis.


Tax Code former § 157.102(a) (since repealed).
3. Subsection (b) states:


If a motor carrier has not operated in Texas during the preceding year, it shall estimate the
miles it will drive during the year and use the estimate in the calculations set forth in
Subsection (a) of this section. The carrier shall adjust any overpayments or underpayments
of tax based on actual mileage in the first reporting period after a year of operation.


Tax Code former § 157.102(b) (since repealed).
4. Citing the Texas and United States Constitutions, Fleming also argues under this point that the
tax is an apportioned tax and that fair apportionment requires the use of the acquired vehicles' mileage
factor. Because he raises these arguments as points of error two and three, we will address them under
those points.



vided by
Texas and undervalues the services provided by other states for the operation of the same property. "The
fair relation prong of Complete Auto requires no detailed accounting of the services provided to the
taxpayer on account of the activity being tax, nor, indeed, is a State limited to offsetting the public costs
created by the taxed activity." Jefferson Lines, 131 L. Ed. 2d at 281. Complete Auto's fourth criterion
asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the
State. Id. A tax based on sales price and reduced to a percentage related to the carrier's prior year's use
of Texas highways is reasonably related to the carrier's activity within the state. The tax at issue here meets
the fourth prong of the Complete Auto test. We concl