**BELL et al. v. TURKEY INDEPENDENT SCHOOL DIST. et al.**

**No. 5891.**

Court of Civil Appeals of Texas. Amarillo.

Sept. 20, 1948.

Rehearing Denied Oct. 18, 1948.

Robert E. Bowers, of Breckenridge, and C. A. Williams, of Childress, for appellants.

Hamilton & Deaver and J. O. Fitzjarrald, all of Memphis, for appellees.

PITTS, Chief Justice.

This appeal involves two tax suits filed by Turkey Independent School District of Hall County against Tony Burson in one suit and T. W. Bell in the other suit, in both of which suits the State of Texas and Hall County were impleaded by the plaintiff. J. H. Reynolds and the joint executors of the estate of A. S. Hickok, deceased, intervened in each case as warrantors of title to Burson and Bell. By agreement of the parties the cases were consolidated, tried jointly and are on appeal on the same record. The cases were tried to the court without a jury and judgment was rendered for the taxing units, hereinafter referred to as appellees, and against the defendants and intervenors, hereinafter referred to as appellants.

Appellees sued Bell for taxes on about twelve sections of grazing land at a fixed valuation of $3.50 per acre for the years 1939 to 1943, both inclusive, together with penalty, interest, attorney fees, and court costs. They sued Burson for taxes on about five and one-half sections of grazing land at a fixed valuation of $3.50 per acre for the years 1939 to 1946, both inclusive, together with penalty, interest, attorney fees, and court costs. Appellants pleaded and proved that they made an annual tender each year to appellees of the taxes appellants claim they owed on a valuation fixed on the land by them at about $1.85 to $2.25 per acre and they renewed such a tender at the time of the trial for all of the taxes owed by them, according to their

claims, for all of the years at the said annual valuation of the said land fixed by them at $1.85 to $2.25 per acre, which tender appellees refused at all times to accept for the reason that the tender did not cover all the taxes owed by appellants according to the claims of appellees.

Appellants claim that the valuation of $3.50 per acre fixed by appellees on the said land for tax purposes was grossly excessive, arbitrarily made, discriminatory, resulting in an attempt to compel appellants to pay more than their just proportion of taxes. They make further complaints about various irregularities in procedure. Appellees reply that an unconditional tender of any part of the taxes due, such as appellants have here made, is an admission by appellants of the justice of the taxes to the extent of the amount tendered by them; that such a tender constitutes a waiver by appellants of any irregularities that may have existed in the proceedings which produced such a tax and that appellants by having made such a tender have estopped themselves from disputing their liability to the extent of the amount of the tender, leaving no issue for this Court to determine other than the question of a proper valuation of the land for tax purposes.

In the case of Republic Ins. Co. v. Highland Park Independent School District, Tex.Civ.App., 123 S.W.2d 784, 789, writ dismissed, the court held that "By tendering part of the taxes claimed the taxpayer admits the justice of the tax to the extent of the amount tendered, and is estopped from disputing his liability to that extent." In 26 R.C.L., Page 650, Paragraph 32, the author says: "The legal effect of a plea of tender is an irrebuttable admission of indebtedness to the extent of the tender, regardless of the final outcome of the action." These rules are supported by the case of City of Rising Star v. Dill, Tex.Civ.App., 259 S.W. 652, affirmed Tex. Com.App., 269 S.W. 769. In the case of State Fair of Texas v. Seay, Tex.Civ.App., 98 S.W.2d 232, writ dismissed, the court held that a tender of money into court by a party defendent conclusively admits every fact which plaintiff would be required to prove in order to recover such a sum of money tendered. These authorities seem to support appellees' position on the question of waiver by appellants of any irregularities in proceedings as well as on the question of estoppel since the same proceedings produced the amount of taxes tendered by appellants and the amount denied by them.

We shall now consider appellants' charges to the effect that the sum of $3.50 per acre fixed by appellees on the said land for taxable purpose is grossly excessive, was arbitrarily made by appellees and that such is discriminatory, resulting in an attempt to compel appellants to pay more than their just proportionate part of taxes. The evidence reveals that intervenors sold the land in question to Burson and Bell in 1943. Bell paid the taxes on the land he bought after 1943 at the rate and on the valuations fixed by the taxing authorities. The evidence further shows that it was the custom of appellees to assess and fix the value of property for tax purposes during the years in question at forty to sixty per cent of its market value. The evidence further reveals that the market value of the land in question and most of the other land in Hall County gradually advanced during the years in question. The testimony of witnesses in the trial court fixed the market value of the land in question anywhere from $2.75 per acre to $4.00 per acre in the year 1939 and the evidence fixed a general trend upward thereafter in its market value until the maximum market value of the land was fixed at $6.50 per acre in 1946. Burson testified that he would not take $6.00 per acre for his land and that it was not for sale at $8.00 per acre. Bell testified that he refused to let a broker show his land at $15.00 per acre. Appellants called M. O. Goodpaster as a witness and proved by him on direct examination that he served as County Judge of Hall County from January 1, 1937 to January 1, 1947, and that he presided over the Commissioners Court of said county sitting as a Board of Equalization each of the years involved in these tax suits; that the said Board tried to keep the values of the property about the same as that fixed the preceding year and that "there was no design to alter it unless there was cause;"

that they fixed the tax values of all property, including ranch land, farm land, city property, bank stock, and all other taxable property at forty to sixty per cent of what they thought its market value to be; that they followed such a policy to the best of their ability during the years here in question and in fact during his whole tenure of office; that appellants' agent was before the Board of Equalization one year concerning the valuation of the land in question and that what he said was considered by the Board of Equalization in fixing the value of the land but its value for taxable purposes was not changed. There is no evidence that has a tendency to contradict that given by Judge Goodpaster upon the solicitation of appellants but there is evidence corroborating a large part of his testimony. The undisputed evidence reveals that Turkey Independent School District accepted the value fixed by Hall County on all property in the District for taxable purposes during all of the years heretofore mentioned.

The testimony of Judge Goodpaster reveals that appellees tried at all times to use and apply the same uniform standard in fixing the values of all property of all classes for taxable purposes as is required by Article 8, Section 1 of the State Constitution, Vernon's Ann.St. It is well known that market value of property is a matter of opinion and honest people can have different opinions about such a matter. The evidence in this case shows varied and different opinions of witnesses about the market value of the land in question. It clearly appears that the valuation of appellants' land as fixed by appellees' agents for taxable purposes for the years in question was based upon honest opinions and upon an honest effort to be fair although the values fixed are not in accord with the opinions of some of the witnesses heard in the trial court. It was held in the case of Early v. City of Waco, Tex.Civ.App., 3 S.W.2d 131, that a mere difference of opinion as to reasonableness of valuations fixed by a Board of Equalization, when such valuations, although deemed erroneous, are the results of honest judgment, will not warrant interference by the courts. It was

further held in the said case that decisions of the Board of Equalization in fixing taxable values of property involve an issue of fact and such decisions are judicial in their nature. It was likewise held that a collateral attack on a judgment of a Board of Equalization in fixing taxable values of property cannot be justified in the absence of fraud or something equivalent thereto. The court held in the case of Port Arthur Independent School Dist. v. Baumer, Tex. Civ.App., 64 S.W.2d 412, writ dismissed, that excessive valuations can be considered as evidence of fraud on the part of a Board of Equalization only if assessments are so grossly excessive as to authorize the court to conclude as a matter of law that the Board did not act honestly. The court further held in the said case that the approval of assessments by the Board of Equalization is conclusive, although slight excessive valuations are shown, if no fraud or irregularities are shown to exist and if the Board of Equalization acted honestly and within their scope of authority in their action. The Supreme Court held in the case of Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288, 289, that "A reasonable discrepancy between the true value of the property and the value at which it is assessed for taxes will be permitted to cover the difference in judgment as to the value of the property; but where the property is assessed at a value seven times as high as its true value (as the record showed such to have been done in that case), the discrepancy is too great. It does not evidence a mere difference in judgment as to a value of the property. * * *

"On the other hand, one whose property has been assessed on substantially the same basis as the great bulk of the property on the same tax roll may not have his assessment cancelled merely because in isolated instances some of the other property on the tax roll has been assessed at less than its proportionate value."

█ In the case at bar the value fixed by appellees was very little higher than that admitted by appellants. In some isolated instances slight discrepancies may

have been shown between its value and the value of some other property in the county. However, we think the values fixed by the taxing agents are in keeping with the rules of law governing the requirements of such and that appellants have wholly failed to show the values fixed were grossly excessive, that the same were arbitrarily fixed and that they were discriminatory. Appellants' points to the contrary are overruled.

Appellants charge that the assessments for taxes by Hall County and the reassessment of taxes by Turkey Independent School District for the years 1939 to 1943 were invalid because Hall County included a larger interest in minerals than was owed by the taxpayer and because the School District left the minerals owned by Hickok and Reynolds unassessed and assessed the surface of the land only. It is our opinion that these alleged irregularities have been waived by appellants under the authorities heretofore cited because of their tender of a large part of the taxes in question. However, the record does not support appellants' charges. It is true that Hall County's pleadings asserted a tax lien on both the land and the minerals but the proof warranted judgment and a tax lien on the surface rights of the land only. Appellants pleaded a severance of the mineral and Hickok and Reynolds reserved their part or a large share of the minerals in the land when they sold it to Burson and Bell in 1943. When the School District made the reassessment, it respected the severance and made the assessment against the surface right only. The record does not disclose whether or not the severed mineral rights were assessed but such does not effect the liability of appellants for their taxes on the land, a large part of which they have tendered in the court. We find no error in the charges made and appellants' points to the contrary are overruled as are all of their other points complaining about irregularities for the reasons heretofore stated.

A careful examination of the record reveals no reversible error and the judgment of the trial court is affirmed.