**HOUSTON LIGHTING & POWER COMPANY, Appellant,**

v.

**DICKINSON INDEPENDENT SCHOOL DISTRICT, et al., Appellee.**

No. B2992.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 5, 1982.

Edward Kliewer, III, William T. Armstrong, III, Foster, Lewis, Langley, Gradner & Banack, San Antonio, for appellant.

Doren Eskew, R. Douglas Muir, Robert S. Johnson, Eskew, Muir & Bednar, Austin, Roland Bassett, Mills, Shirley, McMicken & Eckel, Galveston, for appellee.

Before PRESSLER, MURPHY and ROBERTSON, JJ.

MURPHY, Justice.

We have reconsidered our decision in light of appellees' motion for rehearing and new authority urged in appellees' post-submission brief which inadvertently escaped the court's attention. We have granted appellees' motion for rehearing and now withdraw our original opinion and substitute the following decision.

Houston Lighting and Power Company (HL&P) appealed the trial court's judgment for recovery of delinquent ad valorem taxes, attorney's fees plus post-judgment interest on those amounts, and court costs in favor of appellees, Dickinson Independent School District (Dickinson), its Board of Trustees (Trustees), the Board of Equalization (Board), and the Tax Assessor-Collector, Mr. Wilson S. Deats (Deats). HL&P asserts twenty-two points of error on appeal challenging the findings of fact and conclusions of law, the state of the evidence, and the assessment of attorney's fees, post-judgment interest and court costs. We affirm.

HL&P owns the P.H. Robinson generating facility and cooling towers located within the Dickinson district which began property reappraisal in early 1980. Having received notice of a reappraisal of its properties, HL&P introduced valuation evidence including a sworn rendition at a public hearing held July 29, 1980, which the Board took under advisement. The Board reconvened on August 26, 1980, heard further evidence brought by HL&P and went into executive session to deliberate. The Board completed its deliberations and informed HL&P of the new assessed value placed upon its properties and adjourned. HL&P notified the Board it disagreed with the valuation assessed prior to adjournment. HL&P filed suit against appellees pursuant to Tex.Rev.Civ.Stat.Ann. art. 7345f (Vernon 1979). In its original petition filed September 30, 1980, HL&P challenged and sought

to avoid the assessment on grounds of excessiveness and discrimination. HL&P's amended petition filed December 1, 1980, reiterated its assertions and sought injunctive relief and to mandamus Dickinson to re-value the subject property. Appellees, defendants below, filed their original answer generally denying HL&P's contentions on October 24, 1980. HL&P unconditionally tendered $729,042.73 for taxes due to Dickinson on or about January 22, 1981. In their first amended answer filed March 16, 1981, appellees asserted a plea in abatement in regard to HL&P's tender and a counterclaim for delinquent taxes. The trial court held a hearing on the plea in abatement on March 25, 1981 and found HL&P's tender of January 22, 1981, was not an equitable tender in good faith and entered an order sustaining the plea in abatement. HL&P's second amended petition filed June 4, 1981 reiterated its previous contentions and also asserted violations of Tex.Rev.Civ.Stat.Ann. arts. 6252–17 and 7244c (Vernon Supp.1982). The case came to trial on June 17, 1981 and the trial court signed its final judgment on August 11, 1981. In its findings of fact filed November 4, 1981, the trial court found, in pertinent part, that:

(1) The value of $253,025,790.00 for... the Power Company's property... is not in excess of said property's fair market value as of January 1, 1980.

(2) The Tax Assessor and Collector and the Board... assessed and equalized, respectively, the taxable property within the boundaries of the School District for the year 1980 at its fair market value as of January 1, 1980.

(3) On August 26, 1980, the Board... completed its inspection, hearings, examination, correction and equalization of values of all properties on the assessment lists or books... comprising the 1980 tax rolls, and approved same and finally adjourned.

(4) The Power Company's tender of its taxes for 1980 was not an equitable tender made in good faith.

(5) The Power Company failed to tender... the amount of taxes that it alleged, under its own theory, to be due and owing...

(6) The court duly heard and considered at the trial... all pleadings, evidence, stipulations, arguments of counsel, and prayers for relief including equitable relief, of the parties hereto; and the Court based its judgment and its findings of fact and conclusions of law upon all such elements, notwithstanding the interlocutory order sustaining the School District's plea in abatement.

(7) On January 1, 1980, the Power Company owned the... property [at issue] located within the boundaries of the School District...

(8) The School District levied and assessed 1980 ad valorem taxes... of $2,533,481.68...

(9) The Power Company, after partial tender, is indebted to the School District for... $1,804,438.95.

(10) Attorney's fees for the School District of $300,861.77, an amount equal to 15% of the total recovery for taxes, penalty and interest, are... reasonable...

(11) For work necessary to be performed if the Power Company appeals..., attorney's fees for the School District of $100,287.26, an amount equal to 5% of the total recovery for taxes, penalty, and interest, are... reasonable.

(12) The Power Company's P.H. Robinson Electric Generating Plant, and Cooling Towers... is real estate...

In its conclusions of law, the trial court, in pertinent part, declared:

(1) Meetings of an independent school district board of equalization are not subject to Article 6252–17, Tex.Rev.Civ.Stat. Ann.

(2) Even if the enforcement provision of Section 3A of Article 6252–17, Tex.Rev. Civ.Stat.Ann., did apply... it would only apply to a failure to give sufficient notice of an intended meeting, and not to the failure to meet in open session.

(3) The meeting of the Board... on August 26, 1980, was an open meeting and would have ... complied with Article 6252–17.... if said Act were applicable...

(4) The certification of approval... involved no discretion or judgment..., and was purely a ministerial function.

(5) The School District complied with the requirements of Article 7244c, Tex.Rev. Civ.Stat.Ann.

(6) Delinquent taxes... of $1,804,438.95 for the year 1980 are justly due, owing and unpaid by the Power Company...

(7) The School District is entitled to receive from the Power Company the current 1981 taxes prorated up to and including the date of judgment... to be credited against... [HL&P's] 1981 ad valorem tax liability...

(8) The School District is entitled to recover statutory interest... of 6% per annum from February 1, 1981 until August 11, 1981.

(9) The School District is entitled to recover statutory penalty of 8% of the unpaid... taxes.

(10) The School District is entitled to recover $200,574.51 or ... 10%... as attorney's fees together with statutory interest thereon from August 11, 1981.

(11) If the Power Company appeals... and if said appeal is being prosecuted and remains undecided on or after January 1, 1982, ... the School District is entitled to recover an additional $100,287.26 or ... 5%... for attorney's fees, together with interest thereon at the statutory rate from January 1, 1982, until paid.

(12) The School District is entitled to recover postjudgment interest at the rate of 9% per annum.

(13) The School District is entitled to and has a separate, valid, and subsisting lien on the property [at issue]... to secure payment...

On November 13, 1981, in response to HL&P's objections to its findings of fact and conclusions of law, the trial court filed the additional findings that the fair market value of all HL&P's property within the district was $258,438,360.00, which amount

did not exceed fair market value. The court further found HL&P owned property within the district for which it did not submit a rendition and which was not assessed for taxation purposes in 1980, and that the Tax Assessor and Collector assessed and the Board equalized property other than HL&P's for 1980 at its fair market value. And finally, the court found HL&P had failed to prove its property had a value less than that set by the Board.

■ HL&P's first through third points of error challenge the trial court's findings that Dickinson and the Board complied with Article 7244c [1] as to approval and certification of the tax rolls. HL&P maintains Dickinson adopted a tax rate prior to its approval and certification of the tax rolls, violating Art. 7244c §§ 1(a) and 2 and thereby nullifying the tax levy, and asserts the record is devoid of any evidence to prove Dickinson's compliance with Art. 7244c. The language of 7244c § 1(a) is clearly mandatory, and this mandatory language was not changed in the new Property Tax Code which took effect on January 1, 1982 and is applicable to independent school districts. See, 1979 Tex.Gen.Laws, Ch. 841, § 1 *et seq.* at 2217. Failure to comply with statutory directives in assessing taxes voids the assessment. *Federal Land Bank of Houston v. State,* 314 S.W.2d 621, 630 (Tex.Civ.App. —Amarillo 1958), *rev'd on other grounds,* 160 Tex. 282, 329 S.W.2d 847 (1959); *Lumberton Municipal Utility District v. Cease,* 596 S.W.2d 601, 604–05 (Tex.Civ.App.— Beaumont 1980, no writ). Dickinson must substantially comply with the requisite procedures exacted by statute in order to arrive at a valid tax levy. Dickinson's admission of its tax records raised a presumption that there was a valid levy and assessment of HL&P's tax liability made by a legally constituted taxing authority and that all conditions precedent to the levy and assessment were performed. *Whaley v. Nocona Independent School District,* 339 S.W.2d 265, 267 (Tex.Civ.App.—Ft. Worth 1960,

---

1. Tex.Rev.Civ.Stat.Ann. art. 7244c (repealed, 1979 Tex.Gen.Laws, Ch. 841, § 6(a)(1) at 2329, effective Jan. 1, 1982). Article 7244c is derived from 1978 Tex.Gen.Laws, Ch. 8, §§ 1–7 at 18; 1979 Tex.Gen.Laws, Ch. 644, § 1 at 1475; and 1981 Tex.Gen.Laws, Ch. 851, §§ 2–3 at 3229. Hereafter the statute will be referred to as Art. 7244c without full citation.

writ ref'd); *Stratton v. Del Valle Independent School District,* 547 S.W.2d 727, 728 (Tex.Civ.App.—Austin 1977, no writ). *Birdwell v. City of Boyd, Wise County,* 233 S.W.2d 603, 605, 607 (Tex.Civ.App.—Fort Worth 1950, no writ); In *Birdwell* the court held a tax levy and assessment by city council were binding "although the... proceedings did not strictly adhere to the letter of the law." 233 S.W.2d at 605. The court further stated:

> "Viewing this record as a whole, *we have concluded that the levy... although not strictly following the letter of the law, [was] not void* but [was] well within the spirit of the law *and constitute[s] substantial compliance with the law.*" (Emphasis added). *Id.* at 607.

See also, *Blewett v. Richardson Independent School District,* 240 S.W. 529, 532 (Tex.Comm.App.1922, opinion adopted). The record shows the Board carefully complied with Art. 7244c § 2 and there is evidence through the testimony of Michael W. McCroskey, chairman of the Board, and Wilson Deats, Tax Assessor-Collector for the district, to prove the Board substantially complied with Art. 7244c § 1(a) on August 26, 1980. McCroskey testified he asked Deats if there was further business at the Board's August 26th meeting after hearing HL&P's additional valuation evidence. To Deat's reply that there was no further business, McCroskey asked, "In effect, that means that once we close, the roll is set? He said, 'Yes, that's correct,' and I adjourned with that understanding." Deats testified that the Board "finished all the work and had approved all the values" at the August 26th meeting. He further stated that the certificate of approval dated October 20, 1980, was a formality. Finally, *Bell v. Turkey Independent School District,* 214 S.W.2d 834 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.), cited by HL&P for the proposition that by a tender of taxes the taxpayer admits to the justice of the taxes as to the amount tendered and liability as to that amount, goes on to hold that a tender of taxes constitutes an admission of the justice of the tax, waiver of irregularities in the taxing authority proceedings, and estoppel from disputing liability. *Id.* at 835–836. *Bell* reiterates general principles regarding tender found in *Republic Insurance Co. v. Highland Park Independent School District,* 123 S.W.2d 784 (Tex.Civ.App.—Dallas 1938), *writ dism'd w.o.j.,* 133 Tex. 545, 125 S.W.2d 270 (1939) and *State Fair of Texas v. Seay,* 98 S.W.2d 232 (Tex.Civ.App.—Ft. Worth 1936, writ dism'd). HL&P asserts neither *Birdwell* nor *Bell* is dispositive of the case at issue and maintains *Lumberton* and *Zglinski v. Hackett,* 552 S.W.2d 933 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.) are indistinguishable and controlling. We do not agree. In *Lumberton,* the record showed no attempt to comply with any of the requirements of Article 7244c. 596 S.W.2d at 604. *Zglinski* addressed a taxpayer's remedies to challenge assessments and levies and is not on point. *Zglinski* cites *George v. Dean,* 47 Tex. 73 (1877) and *Dallas Joint State Land Bank of Dallas v. State,* 118 S.W.2d 941 (Tex.Civ.App.—1938, no writ) which hold the essential requisites to a valid tax are a legal levy and a valid assessment. See also, *Big Lake Oil Company v. Reagan County,* 217 S.W.2d 171 (Tex.Civ.App.—El Paso 1949, writ ref'd n.r.e.). None of these cases demand absolute and strict compliance with tax statutes by independent school districts. Moreover, while *Birdwell* and *Bell* may not be directly dispositive of the issues before this court, those decisions become compelling in view of Tex.Rev.Civ.Stat.Ann. arts. 7057g and 7057h (Vernon Supp.1982). Article 7057g § 1 validates all tax levies by any taxing unit which are not in strict compliance with the governing statutes. This article applies where a taxpayer challenges the validity of a tax levy. *Crystal City Independent School District v. Wagner,* 605 S.W.2d 743, 746 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). Article 7057h validates all school district tax levies. We find these statutes dispose of HL&P's contentions in regard to appellees' compliance with Article 7244c and the validity of the tax levy and assessment, and overrule points of error one through three.

In its fourth point of error, HL&P contends the trial court erred in finding that approval and certification of the tax roles was a ministerial, not a discretionary, act. The record indicates the Board had completed all discretionary acts concerning valuation and assessment at the August 26th meeting at which it adjourned and ceased to function. See, *Lincoln v. Commissioners' Court of Willacy County,* 72 S.W.2d 701, 702 (Tex.Civ.App.—San Antonio 1934, writ dism'd). The certificate dated October 20, 1980 merely attested to a prior undertaking and only required the signatures of the ex-Board members. Ministerial acts are those spelled out by law and require no exercise of judgment or discretion. *Id.* HL&P introduced no evidence to prove the Board could exercise either judgment or discretion after it had ceased to exist. The trial court correctly found the signing of the certification form to be ministerial. We overrule HL&P's fourth point of error.

HL&P's points of error five, six and fourteen through seventeen address the trial court's findings in regard to HL&P's unconditional tender. Points five and six urge the trial court's finding of fact that HL&P was indebted for taxes for an amount exceeding its unconditional tender is not supported by the evidence and is against the great weight and preponderance of the evidence. Points fourteen through seventeen challenge the state of the evidence supporting the trial court's findings that HL&P's tender was not made in good faith and that HL&P failed to tender the amount of taxes due under its own valuation theory. Tex.Rev.Civ.Stat. Ann. art. 7057g § 1(b) (Vernon Supp.1982) provides that in the event an assessment is found invalid for lack of compliance with controlling statutes, the last valid tax levy remains in force. Therefore, even if we found the Board's actions invalid, which we do not, HL&P would owe at least the amount of its 1979 tax liability, $2,342,-717.20, which substantially exceeds its tender of $729,042.73. An offer to pay less than the amount due is ineffectual as a tender. *Baucum v. Great American Ins. Co.*

*of New York,* 370 S.W.2d 863, 866 (Tex. 1963); *Stratton v. Del Valle Independent School District,* 547 S.W.2d 727, 729 (Tex. Civ.App.—Austin 1977, no writ). This rule applies to tax cases. *Id.* HL&P's tax liability for 1980 was $2,533,481.68, but it tendered substantially less than the amount due. In 1979, HL&P's sworn rendition was $238,812,785.00, but in 1980 it totaled $144,-399,910.00. HL&P introduced no evidence to explain such a disparity in market value to support its contention of good faith. Evidence of HL&P's prior tax liability and renditions as to the substance of and improvements to HL&P's property within the district were before the trial court at the trial on the merits and the plea in abatement hearing. The court considered all of the valuation evidence and other proof in order to find HL&P remained indebted in excess of its tender, despite the interlocutory order sustaining appellees' plea in abatement. The trial court sustained appellees' plea in abatement which contested HL&P's contention of unconditional tender in good faith. HL&P did not challenge that order. We find the trial court had ample evidence to support its findings and overrule HL&P's fifth and sixth grounds of error.

Points of error fourteen through seventeen address the court's findings concerning HL&P's good faith in tendering $729,042.73 as taxes due and whether HL&P's tax debt exceeded that tender under its own theory of valuation. We have already discussed the basic rules of tender and will not repeat them here. It is well settled that to receive equity, a party must do equity. *Harrison v. Vines,* 46 Tex. 15, 23 (1876). A proper tender of tax due may avoid penalty and interest, but it must be for the full amount due. *Dickinson Independent School District v. McGowan,* 533 S.W.2d 127, 130 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). A tax official is not required to accept partial payment of taxes where a taxpayer claims that such amount is the total tax due. *Id.* We cannot share HL&P's fears that it would never receive a refund should it overpay its taxes, for which it cites *Howell v. City of Dallas,*

549 S.W.2d 36 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.) in light of the general rule that illegal taxes paid are recoverable upon proof of duress. *Johnson Controls, Inc. v. Carrollton-Farmers Branch Independent School District*, 605 S.W.2d 688, 690–691 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.). As to HL&P's contention that the trial court erred in finding HL&P would owe more than the amount tendered under its own valuation theory, the record shows Robert McSwain, HL&P's expert witness, testified the market value of the P.H. Robinson facility was $151,009,330. HL&P's sworn rendition for *all* of its property within the district came to only $144,399,910. The "ratio" theory HL&P espouses is, moreover, based upon investment, not market value. Market value and not any other, is the standard Texas courts have consistently applied. See, *e.g., Polk County v. Tenneco, Inc.*, 554 S.W.2d 918 (Tex.), *on remand*, 560 S.W.2d 416 (Tex.Civ.App.—Beaumont 1977); *Texas Eastern Transmission v. Sealy Independent School District*, 580 S.W.2d 596 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). In light of the above facts and authorities, we cannot say the trial court erred in its findings and overrule points of error five, six, and fourteen through seventeen.

Points of error seven through thirteen address the trial court's findings as to valuation of HL&P's property and the expert testimony introduced to prove its fair market value for purposes of taxation. HL&P maintains the value of $253,025,-790.00 placed upon its property is grossly excessive, unsupported by any competent evidence, and against the great weight and preponderance of the evidence. HL&P further asserts the testimony of appellees' experts failed to base their valuation opinions upon a recognized theory. To support this contention, HL&P maintains appellees' experts' failure to employ the "unit" approach to determine value renders that testimony inadmissible and, therefore, the trial court erred in admitting it. Finally, HL&P complains no evidence supported the trial court's finding that the taxable property within the district was equalized and placed on the tax roll at fair market value as of January 1, 1980; that this finding was against the great weight and preponderance of the evidence; and the uncontroverted testimony of Charles Noble, retained by HL&P, shows substantial categories of property were not assessed at fair market value. HL&P maintains all of the above resulted in a grossly excessive valuation which substantially injured HL&P. Where a taxpayer contends a property valuation is excessive, a court must find it to be so grossly excessive, i.e., so far above the fair cash market value, to raise a presumption that the Board acted fraudulently or did not make a fair, conscientious effort to derive the value. *Westwood Independent School District v. Southern Clay Products, Inc.*, 604 S.W.2d 511, 515 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). In charging the Board created an illegal plan, HL&P must prove the actual value of these other properties and the amount of taxes they should have borne and prove the actual value of its property and its proper tax liability. See, *City of Waco v. Conlee Seed Company*, 449 S.W.2d 29, 32 (Tex.1969); *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414 (1954); *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569 (1954). Where the official action of a board is attacked, courts will presume the board discharged its duties according to law and acted in good faith. *State v. Whittenburg*, 265 S.W.2d at 572. Messrs. Hopper and Harris presented their valuation evidence at trial as experts for appellees. Hopper testified he formulated three approaches to value: cost, income and market. He testified to his prior experience in establishing values of real property and as an economic consultant. Mr. Harris' deposition testimony showed he worked for Pritchard and Abbott, an appraisal firm, for 25 years and had done numerous appraisals for Dickinson. He further testified that although he considered all three value approaches mentioned above, he relied mainly on the cost approach to arrive at a value. HL&P urges, as it did at trial that neither witness was qualified as an expert. We do not agree. The record provides ample pred-

icate for their qualification. Whether an individual qualifies as an expert is a question to be determined by the trier of fact. *Seeley v. Eaton,* 506 S.W.2d 719 (Tex.Civ. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). HL&P further urges that only testimony regarding a "unit" approach to value could be deemed admissible. We do not agree. All of the cases cited by HL&P involve pipeline or railroad companies, and none of these cases require the use of a unit approach to derive property values or to be admissible as evidence. In *Polk County v. Tenneco, Inc.,* 554 S.W.2d 918 (Tex.), on remand, 560 S.W.2d 416 (Tex.Civ.App.—Beaumont 1977), the Supreme Court outlined the aforementioned three value approaches and held that an attack on the methodology and/or figures underlying expert testimony goes to the weight rather than to the admissibility of the testimony. 554 S.W.2d at 924. In *Texas Eastern Transmission v. Sealy Independent School District,* 580 S.W.2d 596 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.), the court noted the value approaches employed in *Polk County,* and further held a valuation based upon recognized appraisal procedures admissible. 580 S.W.2d at 604–605. That case did not require the expert to employ a unit approach to value as a pre-requisite to the admissibility of his/her testimony. The unit approach was not established as conclusive or the only correct value approach in *Missouri-Kansas-Texas Railroad Co. v. City of Dallas,* 623 S.W.2d 296 (Tex.1981). HL&P also urges that only the testimony of Robert McSwain, retained by HL&P to compile a unit approach to value, and R.S. Ledbetter, an HL&P employee presented the market value of its property. Texas courts have held that "use of any one particular approach as the sole standard from which to derive value is fundamentally wrong." *Rowland v. City of Tyler,* 5 S.W.2d 756, 760 (Tex.Comm'n App.1928, judgment adopted); 580 S.W.2d at 604. The trier of fact with whom lies the duty to weigh expert testimony could properly disregard evidence based solely upon one value approach. See, *Wilson v. Scott,* 412 S.W.2d 299 (Tex.1967); *Burchfield v. Tanner,* 142 Tex. 404, 178

S.W.2d 681 (1944); *Diaz v. Cantu,* 586 S.W.2d 576 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Wysong v. Little Creek Hotel Courts, Inc.,* 614 S.W.2d 852 (Tex.Civ.App.—Corpus Christi 1981, no writ). We do not agree with HL&P's contention that it proved substantial properties were not assessed at fair market value through purportedly uncontroverted testimony by Charles Noble. Noble admitted on voir dire that he had not derived values for industrial, personal, utility, railroad or housing (multi-family) properties within the district. Nor did HL&P prove the value of other properties and the taxes they should have borne through the testimony of C.K. Reed. In light of all the testimony and multitudinous documents and exhibits the trial court reviewed, as we have reviewed, to make its findings, we cannot say HL&P discharged its burdens: (1) to prove the Board's value, which was found by the trial court to reflect fair market value, was grossly excessive; (2) to show HL&P suffered substantial injury thereby; (3) to prove the market value of its properties and other properties within the district and their respective tax liabilities. Unless such proof be made, a reviewing court will not overturn an assessment by a board of equalization which functions as a quasi-judicial body. *Fayetteville Independent School District v. Crowley,* 528 S.W.2d 344, 347 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.); *City of Corpus Christi v. Davis,* 575 S.W.2d 46, 52 (Tex.Civ.App.—Corpus Christi 1978, no writ). In light of the above authorities and our review of the record, we conclude the trial court's findings were proper and amply supported by the evidence. Accordingly we overrule points of error seven through thirteen.

HL&P's points of error eighteen through twenty-two challenge the trial court's award of $300,861.77 as attorney's fees and post-judgment interest thereon. HL&P maintains the increase of the fee award from 10% to 15% of the taxes, penalty and interest was an impermissible retroactive application of § 33.48 of the Tax Code, which became effective January 1, 1982, to the judgment of August 11, 1981, be-

cause the trial court was only authorized to apply Tex.Rev.Civ.Stat.Ann. art. 7332 (Vernon 1979). HL&P further contends the evidence does not support the trial court's finding an award of $100,287.26 on appeal was reasonable. Finally, HL&P complains of the award of post-judgment interest on the attorney's fees. Any award of attorney's fees, pursuant to statute or common law, rests within the discretion of the trial court and, absent evidence of an abuse of discretion, will not be overturned. *Espinoza v. Victoria Bank & Trust Co.,* 572 S.W.2d 816, 828 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Fowler v. Stone,* 600 S.W.2d 351, 353 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *Cypress Creek Utility Services Co., Inc. v. Muller,* 624 S.W.2d 824, 827 (Tex.Civ.App.—Houston [14th Dist.] 1981), *aff'd,* 640 S.W.2d 860 (Tex.1982). The record discloses considerable testimony from appellees' attorney as to the number of hours and charge per hour necessitated by this case. HL&P introduced no controverting testimony. An award of attorney's fees on appeal also rests within the trial court's discretion. *Mid-County Rental Service, Inc. v. Miner—Dederick Const. Corp.,* 583 S.W.2d 428, 433 (Tex.Civ.App.—Beaumont 1979), *rev'd on other grounds,* 603 S.W.2d 193 (Tex.1980). An appellate court must apply the law in effect at the time of its decision. *Bradley v. School Board of Richmond,* 416 U.S. 696, 710–714, 94 S.Ct. 2006, 2015–17, 40 L.Ed.2d 476 (1976). In light of Bradley we find the trial court properly applied Tex.Tax Code Ann. § 33.48 (Vernon 1981) (effective Jan. 1, 1982) to its award of attorney's fees, should an appeal be pending on the statute's effective date. We conclude with HL&P's contention that the trial court improperly awarded post-judgment interest on the attorney's fees award. We find HL&P confuses the distinction between costs and attorney's fees by its misreading of *Reserve Life Ins. Co. v. Miller,* 300 S.W.2d 343 (Tex.Civ. App.—Austin 1957, writ ref'd n.r.e.) and subsequent federal authority which has since been repudiated. *See, e.g., Wells v. Hutchinson,* 499 F.Supp. 174, 212 (E.D.Tex.1980). We overrule HL&P's final points of error and affirm the trial court's judgment.

Affirmed.