TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00740-CV






Paul DeNucci and SDN, Inc., Appellants



v.



Wayne March and CB Commercial Real Estate Group, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 95-07184, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 Paul DeNucci and SDN, Inc. (collectively "DeNucci") appeal from a trial-court
judgment that they take nothing by their actions against Wayne March and CB Commercial Real
Estate Group, Inc. (collectively "March") for fraud, violation of the Deceptive Trade Practices
Act (DTPA), (1) and breach of fiduciary duty. We will affirm the judgment.


THE CONTROVERSY


 In 1994, DeNucci decided to sell three car washes. He agreed to pay a commission
to March, a broker with CB Commercial Real Estate Group, Inc., if he obtained a buyer. In
March 1995, DeNucci found a buyer without March's aid; JAT Enterprises agreed to buy two of
the three car washes for $700,000. When March learned of the impending sale, a transaction that
would bring him no commission, March told DeNucci he had another buyer who was ready,
willing, and able to pay $900,000 for all three car washes and would pay in addition $10,000 to
obtain a release of contract rights from JAT. On the basis of this conversation, DeNucci
terminated his transaction with JAT.

 March's client was not, in truth, prepared to buy the three car washes. As a result,
DeNucci was left without a buyer for his property. DeNucci sued March for fraud, violation of
the DTPA, and breach of fiduciary duty.

 At trial, DeNucci requested damages based on the difference between the price JAT
would have paid for the two car washes ($700,000) and the market value of the two car washes
in 1997. DeNucci's expert witness testified that in his opinion the value of the two car washes
in 1997 was $500,000, or $200,000 less than what JAT would have paid in 1995. Thus, under
DeNucci's calculations, he sustained approximately $200,000 in damages as a result of March's
conduct.

 March produced his own expert witness who testified that in his opinion the current
market value of the two car washes was not $500,000, but $700,000. According to March's
expert, if damages were measured by the difference between the current market value of the
property and JAT's $700,000 offer, DeNucci sustained no monetary damages.

 The jury found that March knowingly committed fraud, violated the DTPA, and
breached a fiduciary duty owed to DeNucci. At DeNucci's request, the following instruction
regarding damages was submitted to jury:


What sum of money . . . would fairly and reasonably compensate [DeNucci] for
[the] damages, if any, that resulted from the conduct you have found?


Consider the following element of damages, if any, and none other:


The difference, if any, between the fair market value of the two car
washes as agreed to between Paul DeNucci and . . . JAT
Enterprises, Ltd. and the current fair market value of these two car
washes.



(Emphasis added). The jury answered the question "zero."

 DeNucci appeals from a resulting judgment that he take nothing.


DISCUSSION AND HOLDINGS


 In its first point of error, DeNucci contends the jury's finding of zero damages is
so against the overwhelming weight of the evidence as to be manifestly unjust. DeNucci argues
the opinion testimony of March's expert witness, Jim Frederick, was unreliable. According to
DeNucci, Frederick's testimony is entitled to little or no weight because Frederick did not use the
"income" valuation method in arriving at his opinion regarding the value of the car washes.

 In determining whether a jury's finding is against the overwhelming weight and
preponderance of the evidence, the appellate court examines the record to decide if there is some
evidence to support the finding, and then determines, in light of the entire record, whether the
finding is so contrary to the overwhelming weight and preponderance of the evidence as to be
clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 DeNucci contends that the "income" valuation method is the proper method to
employ in arriving at an opinion as to the market value of the car washes. On appeal, DeNucci
cites several authorities for the proposition that the market value of car washes is best determined
by analyzing the recent income stream of the property in question. Because Frederick used a
different methodology, DeNucci argues his opinion testimony lacked probative force. We
disagree.

 Texas courts have recognized three general approaches in determining market
value: (1) the market data (or comparable sales) approach; (2) the cost approach; and (3) the
income (or income-capitalization) approach. See Religious of the Sacred Heart v. City of Houston,
836 S.W.2d 606, 615-16 (Tex. 1992); Polk County v. Tenneco, Inc., 554 S.W.2d 918, 921 (Tex.
1977). In addition, when circumstances dictate, the Texas Supreme Court has not hesitated to
recognize alternative methods of valuation. See Missouri-Kansas-Texas R.R. v. City of Dallas,
623 S.W.2d 296, 299-301 (Tex. 1981). These approaches are not different definitions of market
value; they are simply different ways of arriving at an estimate of what a willing buyer would pay
a willing seller. Travis Central Appraisal Dist. v. FM Properties Operating Co., 947 S.W.2d
724, 730 (Tex. App.--Austin 1997, writ denied).

 In Polk County v. Tenneco, Inc., 554 S.W.2d 918, 924 (Tex. 1977), the supreme
court held that an attack on the methodology and figures underlying the expert's opinion testimony
goes to the weight rather than to the admissibility of the testimony. Judicial opinions have
emphasized that the duty to weigh expert testimony regarding market value lies with the trier of
fact. See Houston Lighting & Power Co. v. Dickenson Indep. Sch. Dist., 641 S.W.2d 302, 310
(Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.). In a case of conflicting expert-opinion
testimony, the jury, not a judge, should weigh the evidence and resolve any conflicts.

 Frederick was shown to be a well-qualified expert who used the "market data" or
"comparable sales" approach--a known and accepted methodology--in arriving at his opinion of the
current market value of the car washes. DeNucci cross-examined Frederick on his choice of
methodology and his failure to use the "income" approach that DeNucci believed was the most
accurate method of calculating the value of the car washes. The jury was free to consider
DeNucci's attack on Frederick's methodology, as well as Frederick's defense of it in his
testimony, and to resolve the conflicts as they saw fit. We cannot say Frederick's opinion
testimony was entirely without probative force. We overrule the point of error.

 In DeNucci's second point of error, he contends the jury was bound, as a matter
of law, to find some amount of compensatory damages after finding that March had knowingly
committed fraud, violated the DTPA, and breached a fiduciary duty. See Edmonson v. Keller,
401 S.W.2d 718, 720 (Tex. Civ. App.--Austin 1966, no writ) (finding of zero damages in
personal-injury action against great weight and preponderance of evidence where undisputed that
plaintiff sustained substantial injuries). In DeNucci's third point of error, he contends the jury
finding of zero damages is in irreconcilable conflict with the jury's findings that March had
committed the wrongs indicated. Bender v. Southern Pacific Transp. Co., 600 S.W.2d 257, 260
(Tex. 1980) (jury findings may not be struck down on ground of conflict if reconcilable on any
reasonable basis). We will discuss together the two points of error.

 The jury was asked, "What sum of money, if paid now in cash, would fairly and
reasonably compensate [DeNucci] for [his] damages, if any, that resulted from the conduct you
have found?" In assessing the evidence to answer this question, the jury was bound by the
instruction, that restricted consideration to a single element: the difference in market value of the
car washes, if any, at the time of trial, and the $700,000. If the jury believed, as it evidently did,
that there was no such difference, they could only answer zero under the charge given them. 
Under the terms of the charge, the jury was not bound as a matter of law to find any amount of
money as damages. The instruction itself was part of the law binding the jury. And the jury
findings are, of course, reasonably reconciled on the basis indicated--the terms of the damage
instruction permitted the jury to find zero damages even while finding wrongful conduct on
March's part.

 We find no error but if error there was, it was invited because DeNucci consented
to the jury instruction on damages. See Mandell v. Hamman Oil and Refining Co., 822 S.W.2d
153, 159 (Tex. App.--Houston [1st Dist.] 1991, writ denied).

 Although the jury found no actual damages, it awarded DeNucci $150,000 in
"additional damages." Because a finding of actual damages is prerequisite to a finding of 
additional damages, the trial judge disregarded the jury finding of additional damages and ordered
that DeNucci take nothing by his lawsuit. See Bellefonte Underwriters Ins. Co. v. Brown, 704
S.W.2d 742, 745 (Tex. 1986) (award of damages in tort prerequisite to recovery of punitive
damages); Transportation Ins. Co. v. Archer, 832 S.W.2d 403, 406 (Tex. App.--Fort Worth 1992,
writ denied).

 We affirm the judgment.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: August 13, 1998

Do Not Publish

1. Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1998).


 weigh expert testimony regarding market value lies with the trier of
fact. See Houston Lighting & Power Co. v. Dickenson Indep. Sch. Dist., 641 S.W.2d 302, 310
(Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.). In a case of conflicting expert-opinion
testimony, the jury, not a judge, should weigh the evidence and resolve any conflicts.

 Frederick was shown to be a well-qualified expert who used the "market data" or
"comparable sales" approach--a known and accepted methodology--in arriving at his opinion of the
current market value of the car washes. DeNucci cross-examined Frederick on his choice of
methodology and his failure to use the "income" approach that DeNucci believed was the most
accurate method of calculating the value of the car washes. The jury was free to consider
DeNucci's attack on Frederick's methodology, as well as Frederick's defense of it in his
testimony, and to resolve the conflicts as they saw fit. We cannot say Frederick's opinion
testimony was entirely without probative force. We overrule the point of error.

 In DeNucci's second point of error, he contends the jury was bound, as a matter
of law, to find some amount of compensatory damages after finding that March had knowingly
committed fraud, violated the DTPA, and breached a fiduciary duty. See Edmonson v. Keller,
401 S.W.2d 718, 720 (Tex. Civ. App.--Austin 1966, no writ) (finding of zero damages in
personal-injury action against great weight a