September 20, 2010

The Honorable Scott Brumley
Potter County Attorney
500 South Fillmore Street, Room 303
Amarillo, Texas 79101

Opinion No. GA-0798

Re: Method by which a hospital district may set an ad valorem tax rate when it has not set a tax rate since 1996 (RQ-0856-GA)

Dear Mr. Brumley:

You ask about the method by which a hospital district may set an ad valorem tax rate when it has not set a tax rate since 1996.[1]

Article IX, section 5 of the Texas Constitution authorizes the Legislature to create the Amarillo Hospital District (the "District") to assume responsibilities to "levy a tax for medical or hospital care for needy individuals, [and to] maintain or erect hospital facilities" within the boundaries of the district. TEX. CONST. art. IX, § 5(a). The Legislature created the District in 1957, charging it with "full responsibility for providing medical and hospital care for the district's needy and indigent residents." TEX. SPEC. DIST. CODE ANN. § 1001.101 (West 2010); *see also* Act of April 17, 1957, 55th Leg., R.S., ch. 136, §§ 1–19, 1957 Tex. Gen. Laws 298, 298–305. The governing body of the City of Amarillo "shall impose on all taxable property in the district, for the benefit of the district, a tax at a rate not to exceed 75 cents on each $100 valuation of the property." TEX. SPEC. DIST. CODE ANN. § 1001.401 (West 2010); *see also id.* § 1001.001(2) (defining "governing body" as the governing body of the City of Amarillo).

You inform us that the District levied a tax until 1996, when the District sold the hospital to Universal Health Systems of Amarillo, Inc., which has assumed and performed the District's obligation to provide healthcare services to the District's needy and indigent residents. Request Letter at 1–2. You explain that the sale proceeds and earnings from the proceeds were estimated to be sufficient to fund indigent health care for twenty-five years and, accordingly, although the District has continued to adopt a budget, it ceased setting or levying a tax. *Id.* at 2.[2]

---

[1]*See* Request Letter at 2 (*available at* http://www.texasattorneygeneral.gov).

[2]Based on the limited information you have provided, we assume without deciding that the District acted in accordance with its authority when it ceased adopting a tax rate and levying a tax.

You anticipate, however, a day when the funds from the sale of the hospital will not be adequate to "pay both for indigent care and other authorized programs the District may elect." *Id.* In contemplating that eventuality, you are concerned about how the District may resume adopting a tax rate that comports with the Tax Code. *Id.* Your specific conundrum is how to adopt a rate after not doing so for over a decade when the Tax Code's provisions for calculating and adopting a tax rate for the current year presuppose that a tax was levied in the prior year, as we discuss presently. *Id.* at 2–3.

A taxing unit, other than a school district, may not adopt a tax rate that exceeds the lower of the unit's "effective tax rate" or its "rollback tax rate" unless it complies with certain procedures. TEX. TAX CODE ANN. § 26.05(d) (West Supp. 2010). While the statutory formula for these rates involves a number of factors, broadly speaking, "a taxing unit's effective tax rate is a calculated rate generally equal to the last year's taxes divided by the current taxable value of properties that were also on the tax roll in the last year." SUSAN COMBS, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, 2010 TRUTH–IN–TAXATION, A GUIDE FOR SETTING TAX RATES FOR TAXING UNITS OTHER THAN SCHOOLS at 4 (May 2010); TEX. TAX CODE ANN. §§ 26.04(c) (West 2008) (formula for effective tax rate based on "last year's levy"), 26.012(13) (definition of "last year's levy" as based in part on "the amount of taxes that would be generated by multiplying the total tax rate adopted by the governing body in the preceding year by the total taxable value of property on the appraisal roll for the preceding year"). The rollback tax rate is the "(EFFECTIVE MAINTENANCE AND OPERATIONS RATE x 1.08) + CURRENT DEBT RATE." TEX. TAX CODE ANN. § 26.04(c)(2) (West 2008). The "effective maintenance and operations" rate is a calculated rate generally equal to last year's total tax levy, minus the adjusted amount levied last year for debt, divided by the current adjusted total value of taxable property. *See id.* § 26.012(9).

The governing body's designated officer or employee must submit the effective tax rate and the rollback rate to the governing body and provide notice to property owners by mail or newspaper stating, among other things, how adopting a tax rate that is equal to the effective tax rate would increase or decrease the amount of taxes imposed in comparison to last year's tax levy. *Id.* § 26.04(e)(5).

To adopt a tax rate that exceeds the lower of the effective tax rate or the rollback rate, the governing body must conduct two public hearings upon giving notice of, among other things, the prior year's tax rate. *Id.* §§ 26.05(d), .06 (West Supp. 2010). If a taxing unit other than a school district adopts a tax rate that is greater than the rollback rate, qualified voters may petition for a rollback election in a petition signed by seven or ten percent of registered voters, depending on the facts. *Id.* § 26.07(a), (b) (West 2008). If a rollback election is held and the proposition for reducing the adopted rate to the rollback rate passes, the rollback rate becomes the taxing unit's tax rate. *Id.* § 26.07(e).

You reason that, following the literal language of these Tax Code provisions, when a taxing unit has not adopted a tax rate or levied a tax for several years, "last year's tax levy" is zero, which

means that both the effective tax rate and rollback rate would be zero. Request Letter at 3.[3] Consequently, you assert, the adoption of any tax rate would subject the District to the possibility of a rollback election. If voters petition for a rollback election, and it passes, you assert that the District might lose its ability to provide the indigent care required by the constitution and statute. *Id.*[4] You contend that the Tax Code should be construed in a manner that allows the District to avoid the possibility of such a rollback election.

You observe that this office construed another hospital district's organic statute in a manner that would allow it to continue levying a tax to provide for indigent health care after the district sold its hospital. *Id.* at 2 (citing Attorney General Opinion JC-0220). The opinion determined that the sale of the hospital did not end the hospital district's constitutional and statutory duty to provide for indigent health care, and that "if the District has the responsibility for indigent medical care, it must pay for it; it can only *reasonably* do that if the tax is available for that purpose." Tex. Att'y Gen. Op. No. JC-0220 (2000) at 8 (emphasis added). You contend that if the Tax Code's rollback election provisions are construed in light of the general principle of statutory construction, that the Legislature is presumed to have intended a just, reasonable, and feasible result, then the rollback provisions should be construed as inapplicable to a district that did not levy a tax in the prior year. Request Letter at 4 (citing section 311.021(3)–(4) of the Government Code).

You state that "the solution is to put the District in the posture of a new entity setting its budget and tax rate for the very first time, *without reference to* any prior tax rate, effective rate calculation, or notice/roll back calculation during that first tax year," but otherwise providing notice and conducting hearings similar to those required by statute. *Id.* You conclude that "[t]his approach produces a just, reasonable, and feasible result that allows the District to obtain revenue to fund its mandated duties when the need arises." *Id.*

---

[3]Section 26.0441 of the Tax Code provides a formula for a potential increase to the effective maintenance and operations rate for "the first tax year in which a taxing unit adopts a tax rate after January 1, 2000, and in which the enhanced minimum eligibility standards for indigent health care established under Section 61.006, Health and Safety Code, apply to the taxing unit," and for increases in subsequent years. TEX. TAX CODE ANN. § 26.0441 (West 2008). You do not reference section 26.0441, nor provide any information about its potential to alter the scenario you posit. Thus, for purposes of this opinion, we assume that it does not apply to the District to change the result you have described.

[4]It has been suggested that the District may bring forward its last adopted rate, apparently from 1996, under section 26.05(c) of the Tax Code, which could then be supplemented by the Potter County Commissioners Court. *See* Letter of County Judges & Commissioners Association of Texas at 1–2 (Apr. 8, 2010) (on file with the Opinion Committee). Section 26.05(c) provides that if a taxing unit fails to adopt a rate before the date required, the tax rate for the unit for that year becomes the lesser of the effective rate calculated for that year or the tax rate adopted by that unit for the prior year. TEX. TAX CODE ANN. § 26.05(c) (West Supp. 2010). However, since the effective rate is premised on last year's levy, if last year's levy is zero it would be the lower rate. Moreover, section 26.05(c) was amended in 1999. Act of May 25, 1999, 76th Leg., R.S., ch. 423, § 1, 1997 Tex. Gen. Laws 2758, 2759. Prior to 1999, if a district failed to adopt a rate, the effective rate became the adopted rate. Act of May 26, 1991, 72d Leg., R.S., ch. 404, § 1, 1991 Tex. Gen. Laws 1522, 1522–23. Also, while the Potter County Commissioners may impose a tax on property inside the county and outside Amarillo city limits to provide financial aid to the District, it is not required to do so. *See* TEX. SPEC. DIST. CODE ANN. § 1001.403(a) (West 2010).

Courts "give effect to legislative intent as it is expressed by the plain meaning of words used in the statute unless the context necessarily requires a different construction, a different construction is expressly provided by statute, or such an interpretation would lead to absurd or nonsensical results." *City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010). There are indications in chapter 26 that the Legislature, in providing the method for adopting a tax rate, did not contemplate that a tax unit might temporarily cease levying a tax. For example, section 26.06 requires a notice of the public hearing on the tax increase to contain a statement that the taxing unit "will hold two public hearings on a proposal to increase total tax revenues from properties on the tax roll in the preceding tax year by (percentage by which proposed tax rate exceeds lower of rollback tax rate or effective tax rate calculated under this chapter) percent." TEX. TAX CODE ANN. § 26.06(b) (West Supp. 2010). When the lower rate is zero, requiring a statement about the percentage increase becomes nonsensical.

However, even if we were to conclude that Tax Code statutes or parts of statutes that refer to a prior year's levy or tax rate do not apply to the District, we are not aware of any other statutory method of adopting a tax rate that the District is authorized to utilize. The Legislature has provided the method for a taxing unit to adopt a tax rate in chapter 26 of the Tax Code, but has not provided a special procedure for a taxing unit to adopt a tax rate after it ceases levying taxes. Statutes imposing a tax must be strictly construed against the taxing authority. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied). We cannot predict with any certainty that a court would uphold a decision by the District to select the provisions of chapter 26 with which the District will comply. *See Corpus Christi Taxpayer's Ass'n v. City of Corpus Christi*, 716 S.W.2d 578, 580 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (stating that a tax unit such as a city "must substantially comply with the requisite procedures exacted by statute in order to arrive at a valid tax levy [and] failure to comply with statutory directives in assessing taxes voids the assessment"); *Houston Lighting & Power Co. v. Dickinson Indep. Sch. Dist.*, 641 S.W.2d 302, 306 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (stating that a school district "must substantially comply with the requisite procedures exacted by statute in order to arrive at a valid tax levy," or else the assessment is void).

## S U M M A R Y

The Tax Code does not provide a special method for a tax rate to be adopted by a hospital district that has not adopted a tax rate or levied a tax since 1996. We cannot predict whether a court would uphold a tax rate adopted without following the rollback procedures mandated by chapter 26 of the Tax Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee